JAMES V. CREWS AND DOROTHEA G. CREWS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOHN B. LEONARD, III AND BETTY B. LEONARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Crews v. Commissioner
Docket Nos. 14450-91, 19696-91
United States Tax Court
T.C. Memo 1994-64; 1994 Tax Ct. Memo LEXIS 68; 67 T.C.M. (CCH) 2189; February 22, 1994, Filed *68 Decision will be entered under Rule 155. Ps lost their property in a flood and in a subsequent inverse condemnation proceeding were awarded payments for loss of property and prejudgment interest. Held: prejudgment interest is taxable as ordinary income. Held, further, attorneys' fees incurred in the condemnation proceedings are not currently deductible to the extent related to P's condemnation claims; attorneys' fees deductible to extent solely related to interest rate determination. Held, further, additions to tax for negligence and substantial understatement of income tax in one case were properly determined by R. For petitioners: Peter B. Brekhus. For respondent: Robert F. Conte. NIMS
NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in, and additions to, the Federal income tax liability of James V. Crews and Dorothea G. Crews (collectively, petitioners (with the Leonards), or the Crewses) as follows: Additions to Tax -- Sections
Year
Deficiency 6653(a)(1)(A)
6653(a)(1)(B)
6661
1987
$ 40,137 $ 2,006.85  *
$ 10,034.25 *50 percent of the interest due on $ 40,137.
Respondent determined *69 deficiencies in, and additions to, the Federal income tax liability of John B. Leonard, III and Betty B. Leonard (collectively, petitioners (with the Crewses), or the Leonards) as follows: Additions to Tax -- Sections
Year
Deficiency 6653(a)(1)(A)
6653(a)(1)(B)
6661
1987
$ 58,958 $ 2,947.90  *
$ 14,739.50 *50 percent of the interest due on $ 58,958.
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues for decision are: (1) Whether the prejudgment interest awarded petitioners in an inverse condemnation proceeding is ordinary income; (2) whether, if the prejudgment interest award is ordinary income, any portion of the attorneys' fees incurred during the proceeding may be allocated to and deducted from the interest award; and (3) whether the Crewses are subject to additions to tax under sections 6653(a)(1)(A) and (B), and 6661. Respondent has conceded all additions to tax as to the Leonards. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations *70 of facts and attached exhibits are incorporated herein by this reference. The Crewses timely filed a joint return for the tax year 1987. They resided at Highland, California, at the time they filed their petition. The Leonards timely filed a joint return for the tax year 1987. They resided at Redlands, California, at the time they filed their petition. In 1980, petitioners sustained flood damage to their personal residences. After the floods, the City of San Bernardino (City) declared the homes to be uninhabitable. The City subsequently demolished the homes and converted the area into a landscaped flood control channel. Petitioners and other victims of the flood filed a class action suit against the County of San Bernardino, the City, and the San Bernardino Flood Control District (District), on a theory of inverse condemnation and negligence. Petitioners, along with the other flood victims, entered into a contingent fee agreement with their attorneys whereby the attorneys were guaranteed 25 percent of any recovery by settlement or trial, including prejudgment interest, plus $ 125 per hour. The suit was ultimately successful against the City and the District, with petitioners *71 and other flood victims receiving an award on June 24, 1986, pursuant to a judgment rendered by the Superior Court of California for the County of San Bernardino in a case called Walsh, et al. v. State of California, et al., Nos. 199364 and 209924. Shortly thereafter, the City and the District appealed the decision. After taking an appeal, the City and the District entered into settlement negotiations with the petitioners and other flood victims. The City and the District eventually agreed to pay the full amount of the judgment (in staggered payments.) The total recovery received by petitioners and the other flood victims was $ 4,101,321, which included an award of part of the attorneys' fees agreed to by the plaintiffs in the contingent fee agreement. Per their agreement, petitioners and the other class action plaintiffs owed their attorneys a total of $ 1,636,674. The court-awarded attorneys' fees came to $ 735,983, leaving $ 900,691 to be paid by the class action plaintiffs. This amount was divided among petitioners and the remaining plaintiffs into amounts proportionate to the percentage of the total judgment received by each plaintiff. The Crewses were awarded $ 216,039, *72 which included $ 105,183 of prejudgment interest. The Leonards were awarded $ 299,036, which included $ 156,596 of prejudgment interest. Petitioners received their portions of the award, net of attorneys' fees, during 1987. The prejudgment interest received by petitioners was calculated at a market rate rather than a statutory rate in accordance with the holding in Redevelopment Agency of the City of Burbank v. Gilmore, 38 Cal. 3d 790, 700 P.2d 794 (1985). Of the 4,890.75 hours billed by the attorneys in the condemnation case, 142 hours, or 3 percent of the billable hours, related solely to establishing that the holding in Redevelopment Agency of the City of Burbank was applicable to the rate of interest recoverable by the plaintiffs in their condemnation suit. The respective amounts of petitioners' unrecovered attorneys' fees are determinable, and so found, as follows: James V. and Dorothea G. Crews
Net total judgment awarded all plaintiffs
$ 3,270,114.00
Crewses' share of total judgment
216,039.00
Crewses' percentage of total judgment
($ 216,039 divided by $ 3,270,114)
6.6 percent
Total unrecovered attorneys' fees due
from all plaintiffs
900,691.00
Crewses' share of unrecovered
attorneys' fees ($ 900,691 x 6.6 percent)
59,445.60
John B. and Betty B. Leonard
Net total judgment awarded all plaintiffs
3,270,114.00
Leonards' share of total judgment
299,036.00
Leonards' percentage of total judgment
($ 299,036 divided by $ 3,270,114)
9.14 percent
Total unrecovered attorneys' fees due
from all plaintiffs
900,691.00
Leonards' share of unrecovered
attorneys' fees ($ 900,691 x 9.14 percent)
82,323.16
*73 The Crewses engaged Robert Becerra of Triple Check Income Tax to prepare their 1987 tax return. At no time during their contacts with Becerra in connection with the preparation of their return did the Crewses inform him, either about the litigation or about the receipt of the award, because they did not want to confuse him. The Crewses neither reported any portion of the prejudgment interest award nor deducted any portion of their attorney expenses. The Leonards engaged David Kennedy, a certified public accountant, to prepare their 1987 tax return. In connection with the preparation of their return the Leonards informed Kennedy that they had lost their previous home in a flood and had subsequently purchased a different home. They also informed him that they had litigated their loss and prevailed and had received their portion of the award in 1987. The Leonards, following Mr. Kennedy's advice, treated the prejudgment interest portion of their award as a return of capital, reported a capital gain on the balance, and did not deduct any of their attorneys' fees. OPINION In Fulks v. Commissioner, T.C. Memo. 1989-190, the precise substantive issues *74 presented in this case were decided unfavorably to petitioners' position, a fact brought to petitioners' attention at the trial. Nevertheless, since petitioners wish to press on we will again address the issues. It is well settled that the interest component of a condemnation award is income, and not part of the sale price of a capital asset. Kieselbach v. Commissioner, 317 U.S. 399 (1943); Casalina Corp. v. Commissioner, 60 T.C. 694, 703 (1973), affd. per curiam without published opinion 511 F.2d 1162 (4th Cir. 1975); see also Tiefenbrunn v. Commissioner, 74 T.C. 1566, 1571-1572 (1980). In Kieselbach the Supreme Court stated: The sum paid these taxpayers above the award * * * was paid because of the failure to put the award in the taxpayers' hands on the day, * * * when the property was taken. This additional payment was necessary to give the owner the full equivalent of the value of the property at the time it was taken. Whether one calls it interest on the value or payments to meet the constitutional requirement of just compensation is immaterial. *75 It is income * * * paid to the taxpayers in lieu of what they might have earned on the sum found to be the value of the property on the day the property was taken. * * * * * * While without their payment, just compensation would not be received by the vendor, it does not follow that the additional payments are a part of the sale price * * *. The just compensation constitutionally required is not the same thing as the sale price of a capital asset. [Kieselbach v. Commissioner, 317 U.S. at 403-404; fn. refs. omitted.]
We have applied the foregoing principle in subsequent cases. See, e.g., Casalina Corp. v. Commissioner, supra; Fulks v. Commissioner, supra.
Petitioners' efforts to distinguish the Supreme Court's holding in Kieselbach v. Commissioner, supra, on the basis of a California case, Redevelopment Agency of the City of Burbank v. Gilmore, 38 Cal. 3d 790, 700 P.2d 794 (1985), are unavailing. The California Supreme Court stated: The governing principles are well established. In *76 Seaboard Air Line Ry. v. U.S. (1923) 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664, the United States Supreme Court explained that when private property is taken for public use, "the just compensation to which the owner is constitutionally entitled is the full and perfect equivalent of the property taken. [Citation.]" This "means substantially that the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken. [Citation.]" (at p. 304, 43 S.Ct. at p. 356, italics added.) Therefore, if the government pays for condemned property only after taking and using it, the owners "are entitled to have the full equivalent of the value of [its] use at the time of the taking paid contemporaneously with the taking." ( Phelps v. United States (1927) 274 U.S. 341, 344, 47 S.Ct. 611, 612, 71 L.Ed. 1083, italics added.) An award in the nature of interest "at a proper rate" is a "fair and reasonable" reimbursement for the deferred payment. * * * [Redevelopment Agency of the City of Burbank v. Gilmore, 38 Cal. 3d at 797-798, 700 P.2d at 799-800.] *77 In so holding the California Supreme Court was not attempting to revisit Kieselbach. It was merely focusing its attention on the rate of interest to which the condemnees were entitled so as to comply with the "full and perfect" constitutional mandate of Seaboard Air Line Ry. v. United States, 261 U.S. 299 (1923). The issue of the rate at which constitutionally required interest is to be paid on an inverse condemnation award is separate and distinct from the issue before us -- the Federal tax treatment of such interest. We also note that the California Court itself recognized that condemnation interest is not exempt from Federal income tax. Redevelopment Agency of the City of Burbank v. Gilmore, 38 Cal. 3d at 805 n.15, 700 P.2d at 805 n.15. Petitioners further argue that if prejudgment interest received as part of an inverse condemnation award is taxable as income, then the attorneys' fees incurred to produce the prejudgment interest are deductible as a section 212 expense. Section 212 provides: SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case *78 of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year -- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax.
Section 1.212-1(k), Income Tax Regs., provides: (k) Expenses paid or incurred in defending or perfecting title to property, in recovering property (other than investment property and amounts of income which, if and when recovered, must be included in gross income), or in developing or improving property, constitute a part of the cost of the property and are not deductible expenses. Attorneys' fees paid in a suit to quiet title to lands are not deductible; but if the suit is also to collect accrued rents thereon, that portion of such fees is deductible which is properly allocable to the services rendered in collecting such rents. Expenses paid or incurred in protecting or asserting one's rights to property of a decedent as heir or legatee, or as beneficiary under a testamentary trust, are not deductible.
*79 Section 263 provides in general that no deduction shall be allowed for capital expenditures. Mosby v. Commissioner, 86 T.C. 190, 195 (1986). As we stated in Mosby, one type of expenditure that must be capitalized under section 263 is an expenditure which involves the acquisition or disposition of a capital asset. 86 T.C. at 196. We pointed out that in Woodward v. Commissioner, 397 U.S. 572, 576 (1970), the Supreme Court has held that in cases where the litigation involves the acquisition or disposition of a capital asset, the origin of claim is the controlling test in deciding whether the expenditure should be capitalized. In Mosby v. Commissioner, supra (as well as in Fulks v. Commissioner, T.C. Memo. 1989-190), we held that attorneys' fees incurred in connection with an inverse condemnation suit are capital in nature and cannot be deducted as ordinary and necessary expense under section 162 or section 212. Applying the origin of the claim test as enunciated by the Supreme Court in Woodward v. Commissioner, supra, *80 and as applied by the Court of Appeals for the Ninth Circuit in Madden v. Commissioner, 514 F.2d 1149 (9th Cir. 1975), revg. and remanding 57 T.C. 513 (1972), we held that the nature of a condemnation proceeding is inherently related to the sale and acquisition of land, thus rendering attorneys' fees incurred in connection therewith a capital expenditure, nondeductible under section 263. Mosby v. Commissioner, 86 T.C. at 198. We apply this rationale here. We hold that the origin of petitioners' claims involved the disposition of capital assets; i.e., their homes, so that attorneys' fees incurred in that connection are nondeductible capital expenditures. The foregoing holding is consistent with our holding in Casalina Corp. v. Commissioner, 60 T.C. 694 (1973). There, the taxpayer argued that legal and related expenses incurred in condemnation proceedings should be allocated between the condemnation awards and the interest received thereon. In response we said, citing several cases, that it is well settled that a property owner's expenses in connection with a *81 condemnation are incurred to increase the award for the loss of the property, and are therefore capital expenditures. Subsequent to the time the parties filed their opening briefs we decided Kovacs v. Commissioner, 100 T.C. 124 (1993), which, among other things, dealt with the taxability of interest on damages held to be excludable from gross income under section 104(a)(2). In that case, the taxpayer was permitted to deduct that part of their attorneys' fees that were allocable to interest. By Order in the case now before us, we directed the parties to submit supplemental briefs addressing the appositeness, if any, of Kovacs to this case. After considering the parties' respective arguments, which essentially rehash their prior positions, we conclude that Kovacs is not apposite because in that case the taxpayers' underlying claim did not relate to the disposition of a capital asset, but rather to the taxability of interest on damages recovered for personal injury. On facts involving the same Maryland condemnation statute as in Fulks v. Commissioner, supra, the United States Court of Federal Claims has held *82 that a taxpayer may not deduct any portion of its attorneys' fees from the interest income recovered in an underlying condemnation action. Baylin v. United States,     Fed. Cl.     (Dec. 20, 1993). The attorneys for the plaintiffs in the condemnation case expended 142 billable hours in connection with supplemental hearings to establish the rate at which prejudgment interest would be paid on the condemnation award. Since there is a clear line of demarcation between these legal services and those expended in obtaining the condemnation award, payment to the attorneys for the segregated 142 hours is deductible under section 212(1). See Kovacs v. Commissioner, 100 T.C. at 133. Respondent notes in her supplemental brief that petitioners' attorney charged only 3 percent of his time litigating the prejudgment interest issue. Respondent states that if the Court is inclined to allow a deduction for these 142 billable hours, then the deduction should be limited to 3 percent of the attorneys' fees that petitioners paid. Since petitioners, who have the burden of proof under Rule 142, have submitted no evidence establishing any greater amount to *83 which they might be entitled, we hold that they may deduct 3 percent of their unrecovered attorneys' fees, for the reasons above stated. We have considered petitioners' remaining arguments on the various issues and find them to be without merit. Respondent determined additions to the Crewses' Federal income tax liability pursuant to sections 6653(a)(1)(A) and (B), and 6661, which sections were in effect for 1987, the year before the Court. Petitioners Crews have the burden of proof as to these issues. Rule 142(a). At the trial, James Crews testified that since he didn't want to confuse his tax preparer he did not report the condemnation award and did not take a deduction for the attorneys' fees expended. Since the Crewses have thus failed to prove that respondent's determination of additions to tax for negligence and substantial understatement of income tax is erroneous, they must suffer the consequences of that failure. See Bixby v. Commissioner, 58 T.C. 757, 792 (1972). To reflect the foregoing, Decisions will be entered under Rule 155.